WATTS, administratrix, *vs.* BAKER *et al.*

1. Under the facts of this case, the receipt in full given by the administrator *de bonis non* with the will annexed, to the administratrix of the deceased executor, was open to explanation, and was not conclusive upon the legatees in a suit by them against the administratrix to compel an accounting for an alleged *devastavit* by the executor.

2. As the accountability of the executor was the same, whether his fortune improved or not whilst he was in the trust, evidence to show that it did improve was irrelevant and inadmissible.

3. A witness is not incompetent because he is the husband of a legatee who is one of the plaintiffs, and because he takes a specific legacy under the will, he being no party to the action and his legacy not being in question.

4. The testator having devised to his wife for her sole use and benefit during her natural life certain lands, with remainder to his minor son in fee, disposed of a certain horse in the same way, and then added: "I give, bequeath and devise to my wife in final extinguishment of her right of dower in my real estate, free for her own use and benefit, $1,000 cash and so much household and kitchen furniture as she may need for her immediate housekeeping, two good mules or their equivalent, one cow and calf, and one year's support. At the death of my wife, all the property given in extinguishment of her dower is to be sold, as hereinafter directed, and the proceeds to be divided among my living heirs, to-wit, (naming his children) share and share alike":

*Held*, that this bequest of one thousand dollars cash was absolute in the wife, she having accepted the provision offered her in lieu of dower, and that the testator's children took no interest by the will in the money, but a remainder in the property only.

May 9, 1887.

Administrators and Executors. Receipts. Evidence. Witness. Wills. Construction. Dower. Before Judge

BRANHAM. Floyd Superior Court. September Term, 1886.

On October 21, 1885, Benjamin W. Baker, M. E. Mc-Ghee, Mrs. F. L. (Narcissa S.) Miller and H. H. Baker, heirs and distributees of the estate of John Baker, deceased, brought suit against Mrs. Ella M. Watts, as administratrix of George T. Watts. They alleged that Baker had died testate; that George T. Watts qualified as his executor, and received certain property and funds in his hands, among them being $1,000 in cash and notes of H. B. Baker and C. F. Milligan; that he had committed various acts of *devastavit* and waste and failed to account to the distributees; that he retained possession of the estate; and that he died and the defendant became his administratrix.

On the trial, the evidence was voluminous. It is necessary to set out only the material portions. John Baker died in 1874, leaving a will containing the devise set out in the fourth head-note. Dr. George T. Watts qualified as executor. After his death, in 1880, the defendant became his administratrix. Mrs. Elizabeth Baker, wife of the testator, died in 1879. Alfred S. Baker died, leaving the complainants as the surviving devisees mentioned in the third item above stated. Hope H. Baker was appointed administrator *de bonis non* of his estate, and he gave to Mrs. Watts the following receipt:

"Received, Rome, Ga., July 30, 1880, of Mrs. Ella M. Watts the following notes and papers belonging to the estate of John Baker, deceased, she turning over the same as the wife and legal representative of Geo. T. Watts, dec'd, the former executor of the estate of John Baker, deceased; this receipt being given to her in full acquittance of said papers and received in full settlement of the executorship of said Geo. T. Watts, of her as his legal representative; together with the real estate belonging to said estate of said John Baker; deceased, and yet undisposed of, the sum being the personalty and chose in action uncollected and undisposed of, to-wit: One note dated Dec. 24, 1874, for ninety 10-100 dollars ($90.10), with credits of $10.00 paid Feb'y 5, '76; $24 Feb'y 12, '79, and $25.00 Dec. 10, '79, and signed by J. W. Davis and M. E. Shelldon" (and other notes named).

As to the items involved in the decision, the evidence for the plaintiffs was, in brief, as follows: Watts, executor, in his returns never included any voucher for the $1,000 as paid to Mrs. Baker. She did not use it during her lifetime. A witness testified that Watts spoke generally as having control of the estate, and that the money was all in his hands. He was her brother and had charge of her affairs during her life. The husband of one of the complainants (who had a small legacy under the will, but not contested in this case) testified that Watts had told him that he bought certain land in Alabama with the $1,000; and other admissions of indebtedness on the part of Watts and agreements to settle with the legatees were stated. No settlement was made, however, during his lifetime. The McGhee note was given for a mule which had been the property of Baker in his lifetime and had afterwards passed to Mrs. Baker, and was sold by Watts for her. McGhee subsequently paid the note. The Milligan note was given for a wagon and steers bought from Watts, who stated that it belonged to Mrs. Baker. This was not paid in full until after Watts died; then a new note was given in its place to defendant as his administratrix, and was subsequently paid to her. After the death of Mrs. Baker, certain furniture and personalty left by her was divided among the plaintiffs. When the receipt was given to Mrs. Watts, as administratrix of her husband, it was for the notes and property which she stated were on hand. She said that was all of the estate left unsettled, and on that understanding the receipt was given.

The administrator *de bonis non*, who gave the receipt, testified that he knew nothing about the Milligan note at the time; that he did not intend to release the defendant from any claim of the heirs of John Baker on her husband, but he notified her that if there was anything wrong he would hold her responsible for it; that what she gave him and what was intended to be covered was what she told him was all she had that belonged to the estate; that the

matters now in controversy were not in contemplation at the time the receipt was given; and that the specific ob- ject of the receipt was to cover the property which de- fendant delivered to him, and to release her as to it and nothing else. When the receipt was given, the plaintiffs, except Mrs. Miller and Mrs. McGhee, were present; the former was not represented in the settlement; the latter did not authorize any settlement, but her trustee, Reeves, was present; she was informed of the settlement, but was not satisfied with it. When Watts entered upon the ad- ministration of the Baker estate, his property was limited; during his administration and at his death, his property largely increased.

The evidence for the defendants as to the material points was, in brief, as follows: Plaintiffs and defendant had a final settlement. An attorney was employed who calcu- lated the amounts and made out the final return. The re- ceipt was drawn and signed by the administrator *de bonis non* of Baker. There was some question as to who should pay the attorney, and the ordinary held that the estate should do so. When the settlement was made and the re- ceipt signed, Mrs. Watts, H. H. Baker, Benj. W. Baker and Reeves, the trustee of Mrs. McGhee, were present. Miller, the husband of one of the plaintiffs, was on the administration bond of H. H. Baker. The receipt was read aloud before being signed. The settlement was rather in the nature of an agreed settlement between the parties in interest, of all their differences, than a settlement and discharge by the ordinary. They had had some disagree- ment, and it was agreed that if defendant would turn over the papers mentioned, an acquittance or receipt should be given her. The defendant testified that there was a full settlement and the receipt was given; that she never heard then nor until long afterwards of the demands now made in this suit; and that when the renewal of the Milligan note was made, something was said about Dr. Watts's having settled it with the estate. Watts was a man of good stand-

v 78 40

ing and character, and did not bear the character of appropriating the money of others. There was other testimony as to the sources from which the property of Watts was derived, the expenditures of Mrs. Baker, etc.. which need not be stated in detail.

The jury found the following verdict:

"We, the jury, find for plaintiffs one thousand dollars, with interest at seven per cent. from September 8th, 1885, being money found in the hands of the executor, Geo. T. Watts, at the death of Mrs. Baker. We also find for seventy-five dollars, with interest at seven per cent. from the 23d day of October, 1877, being the H. B. McGhee note. We also find fifty-nine 90-100 dollars, with interest from August 17th, 1880, being the C. F. Milligan note. This October 1, 1886."

The defendant moved for a new trial on the following grounds (pending which the plaintiffs voluntarily wrote off the finding as to the Milligan note):

(1)–(3) Because the verdict was contrary to law and evidence.

(4) [Not pressed in argument.]

(5) Because the court charged as follows: "This settlement or receipt is open to denial or explanation. You may inquire what property or items of indebtedness were in the minds or contemplation of the parties at the time it was signed; whether the items now sued for were considered and settled by the parties at that time; whether they were intended to be covered by, and were in fact covered by, this receipt or settlement, or not. For, notwithstanding this receipt or settlement, if Geo. T. Watts owed the estate other sums or debts not in fact covered by the receipt or intended to be covered thereby and receipted for, the plaintiffs may recover for such items or sums, if the proof authorizes it."—The error assigned was that there was no evidence to support this charge.

(6) Because the jury found contrary to the following charge: "The receipt is *prima facie* evidence of a settlement in full, and unless it is shown that there were other items or debts not covered by it, it would defeat the plaintiffs' right to recover."

(7) Because the court charged, in effect, that the $1,000 mentioned in the third item of the will was not an absolute gift, but was to be divided along with the proceeds of the other property after the death of Mrs. Baker, if then on hand.

(8) Because the jury found contrary to the following charge: "If Geo. T. Watts paid over the $1,000 to the widow, it would be an execution of his trust as to this item of the will, and neither he, as executor of John Baker, nor his administrator in this suit, would be liable for it."

(9) Because the jury found contrary to the following charge: "The separate property of Mrs. Baker, or the proceeds thereof, cannot be recovered in this case. To authorize a recovery on account of any property conveyed by this clause of the will, the evidence must identify the property as being the property or part thereof conveyed by this clause, or the proceeds thereof."

(10) Because the court admitted, over objection, testimony to show what Dr. Geo. T. Watts was worth before he became executor of Baker and what afterwards.

(11) Because the court admitted the evidence of F. L. Miller, to the effect that Watts promised to get up the money due Mrs. Baker, and stated that he had invested it in land in Alabama.—The objection was that Miller was a legatee and Watts was dead.

The motion was overruled, and the defendant excepted.

WRIGHT, MEYERHARDT & WRIGHT, for plaintiff in error.

FORSYTH & HOSKINSON, for defendants.

BLECKLEY, Chief Justice.

Baker, the elder, died testate, leaving Dr. Watts his executor. The executor, before fully administering the will, died intestate, and his widow, Mrs. Watts, administered upon his estate. An administrator *de bonis non* with the will annexed (one of the testator's sons) was also appointed

upon the estate of Baker.  A settlement, total or partial, took place between the administratrix of the deceased executor and the administrator *de bonis non* of the testator, in which the former turned over to the latter certain notes as the property of the testator's estate, and on receiving these notes, the latter gave to the former a receipt in full. Present at the settlement and at the giving of this receipt were most of the testator's children, the principal legatees under his will.   The children afterwards brought their action of complaint against the administratrix of the executor for an alleged *devastavit* by the executor in his lifetime.   The plaintiffs obtained a verdict, and the defendant made a motion for a new trial, and a new trial was refused.

1.  The court ruled that the receipt in full might be explained; and there was in the evidence an explanation tending to show that the settlement was confined to assets of the original estate which came to the hands of the administratrix, and that it did not include any inquiry into the actings and doings of the deceased executor touching other assets.  If that was the scope of the settlement, the effect of the receipt ought to be restricted accordingly. The words " in full," etc. ought to be interpreted with reference to the subject-matter of the settlement on which the instrument was founded.   Assets of the testator's estate which came to the hands of the administratrix of the executor, and assets which the executor had wasted in his lifetime would be wholly different subject-matters. The rule of accountability on the part of the administratrix would not be the same as to both, but different as to each.   For the former class of assets, if not duly surrendered, she would have to account personally out of her own estate, and for the latter in her representative capacity out of the estate of her intestate.   In receipting to her touching either, it would be very proper to describe her as administratrix, and a receipt so describing her might embrace both.   This being so, the receipt now in question

is ambiguous; and parol evidence is admissible to explain all ambiguities, latent and patent. Code, §3801. For some authorities touching the explanation of receipts, see the citations under section §3807 of the code. Under the facts of this case, the receipt in full given by the administrator *de bonis non* with the will annexed, to the administratrix of the deceased executor, was open to explanation, and was not conclusive upon the legatees in a suit by them against the administratrix to compel an accounting for an alleged *devastavit* by the executor.

2. The court admitted evidence going to show a rapid accumulation of property by the executor whilst in charge of the testator's estate. This was error. As the accountability of the executor was the same, whether his fortune improved or not whilst he was in the trust, evidence to show that it did improve was irrelevant and inadmissible.

3. There was no error in holding the husband of one of the plaintiffs a competent witness to testify in their behalf. He had no interest and was not a party. Though he took a small specific legacy under the will, this was in nowise put to hazard by any possible result of the suit. In civil cases, husband and wife may testify for each other. Code, §3854. A witness is not incompetent because he is the husband of a legatee who is one of the plaintiffs, and because he takes specific legacy under the will, he being no party to the action and his legacy not being in question.

4. We have no doubt that the court misconstrued the will, touching the interest which the testator's widow took in the $1,000 cash, offered to her and accepted by her in lieu of dower. There is by the will no express limitation of the widow to a life estate, either in the money or the property, and this being so, a general presumption obtains that a conveyance of the fee was intended. Code, §2448. As to the property which the will directs to be sold on the death of the widow and the proceeds divided, this presumption is rebutted by clear and necessary implication, but we cannot believe that by the term "property," in

this part of the will, the testator intended to embrace money, for such a construction would convict him of an absurdity—the absurdity of directing the sale of money in order to get its proceeds for division amongst his children. In announcing our ruling upon this point, we copy the terms of the will, just as they appear in the instrument, as to everything essential. The testator having devised to his wife for her sole use and benefit during her natural life certain lands, with remainder to his minor son in fee, disposed of a certain horse in the same way, and then added: "I give, bequeath and devise to my wife in final extinguishment of her right of dower in my real estate, free for her own use and benefit, $1,000 cash and so much household and kitchen furniture as she may need for her immediate housekeeping, two good mules or their equivalent, one cow and calf, and one year's support. At the death of my wife, all the property given in extinguishment of her dower is to be sold, as hereinafter directed, and the proceeds to be divided among my living heirs, to-wit (naming his children), share and share alike."

This bequest of one thousand dollars cash was absolute in the wife, she having accepted the provision offered her in lieu of dower, and the testator's children took no interest by the will in the money, but a remainder in the property only.

We have studied the facts as carefully as the law, involved in the whole case, and the result is that we reverse the judgment refusing a new trial, with direction as follows: Let the verdict stand for the amount of the note not already written off, provided the plaintiffs will write off all the rest of the recovery.

Judgment reversed, with direction.